### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ELIZABETH POLANCO,

        Plaintiff,

        Case No.: 8:19cv 104 T 36 c p t

v.

OCWEN LOAN SERVICING, LLC,
a foreign limited liability company,

        Defendant.

_____/

## COMPLAINT AND JURY DEMAND

**COMES NOW** the Plaintiff, Elizabeth Polanco, by and through the undersigned counsel, hereby sues Defendant, Ocwen Loan Servicing, LLC.  In support thereof, Plaintiff states:

## INTRODUCTION

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt.  Plaintiff brings the action for statutory damages and actual damages against the Defendant, as well as attorney's fees and the costs of litigation for the Defendant's violations of the Florida Consumer Collection Practices Act, Title XXXIII, Chapter 559, Part VI, Florida Statutes ("FCCPA"), and violations of the Telephone Consumer Practices Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  These laws prevent creditors and debt collectors from *inter alia,* engaging in abusive, unfair and deceptive debt collection practices, as well as regulate the type of telephone equipment organizations may use to contact consumers for debt collection purposes.

## JURISDICTION, VENUE & PARTIES

1.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the TCPA, 47 United States Code, Section 227 *et seq*.  Supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.      Defendant is subject to the jurisdiction of this Court as Defendant regularly transacts business in this District and the events described herein occurred in this District.

3.      Venue is proper in this District as the acts and transactions described herein occur in this District.

4.      At all material times herein, Plaintiff is a natural person residing in Manatee County, Florida.

5.      At all material times herein, Ocwen Loan Servicing, LLC is a foreign limited liability company existing under the laws of the state of Delaware, with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

## GENERAL ALLEGATIONS

6.      Plaintiff, Elizabeth Polanco, is an individual, a natural person and a "consumer" who is alleged to owe a debt to Ocwen Loan Servicing, LLC.

7.      Plaintiff Elizabeth Polanco ("Plaintiff" or "Polanco") has been the object of collection activity arising from a "consumer debt" as defined by Fla. Stat. § 559.55(6) and 15 U.S.C. § 1692a(5).

8.     The Defendant, Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"), itself and through its affiliates, regularly attempts to collect debts, including but not limited to, alleged balances due from Plaintiff on a mortgage loan.

9.     Defendant is engaged in the collection of consumer debts using the telephone, the U.S. Mail, and all other means at its disposal.

10.     Ocwen is a "consumer collection agency" within the definition established by the FCCPA, Fla. Stat. § 559.55(3) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

11.     At all times herein, Ocwen was a "person" as defined by Section 559.55, Fla. Stat. *See Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

12.     At all times herein, Ocwen either acted on its own accord, or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers.

13.     At all material times herein, Ocwen is a "debt collector" as defined by Florida Statutes, Section 559.55(7).

14.     At all times material herein, Ocwen's conduct with regard to the debt, complained of below, qualifies as "communication" as defined by Fla. Stat. § 559.55(2) and 15 U.S.C. § 1692a(2).

15.     At all times material herein, Ocwen used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1); which has the capacity to store or produce telephone numbers to be

called, using a random or sequential number generator to dial such numbers, including a predictive dialer.

## FACTUAL ALLEGATIONS

16.    On July 26, 2005, a Mortgage was recorded against Polanco's real estate property by virtue of a promissory note dated July 22, 2005 (the "Debt").

17.    The Debt was incurred primarily for personal, household or family use. More specifically, the Debt was used to obtain Polanco's residence.

18.    Thereafter, in 2009 Polanco experienced financial difficulties and Ocwen treated the debt as a defaulted debt.

19.    On or about July 21, 2017, Ocwen initiated a foreclosure action against Polanco styled *Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-7 v. Polanco, et al.,* Case No. 2017-CA-03238 (Twelfth Judicial Circuit, Manatee County, Florida) (the "Debt Collection Action").

20.    The complaint filed in the Debt Collection Action requested the state court to (i) determine the amounts due under the promissory note and mortgage; (ii) order the clerk to sell the property; and (iii) retain jurisdiction in order to enter a deficiency judgment if the proceeds of the sale are insufficient to cover the amount due.

21.    The verification of the Complaint in the Debt Collection Action reads:

> OCWEN LOAN SERVICING, LLC, as Attorney in Fact for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH

ASSETS   CORP.,   COLLATERALIZED
ASSET-BACKED BONDS, SERIES 2005-7

22.     The verification of the Complaint in the Debt Collection Action is signed by a Contract Management Coordinator of Ocwen, acknowledging its status as both agent and attorney in fact for Deutsche Bank.

23.     Since at least July 2017, Ocwen has been prosecuting the Debt Collection Action as attorney in fact and agent for Deutsche Bank.

24.     Shortly, thereafter, Polanco retained legal counsel, Andrew Lyons, Esq., to represent her with respect to the debt and defend the foreclosure action and related debt collection.

25.     On or about August 16, 2017, Andrew Lyons, Esq., filed his appearance as counsel on behalf of Polanco with the relevant court and Ocwen's counsel.

26.     Polanco has been continuously represented by legal counsel with respect to the Debt from at least August 16, 2017 to the present, and Defendant has always been aware of Polanco's representation by counsel during this period.

27.     On or about May 2, 2018, Polanco entered into a Stipulation as to Entry of Final Judgment in Mortgage Foreclosure ("Stipulation").  The Stipulation specifically agreed to waive any right to seek a deficiency judgment against Polanco in the Debt Collection Action. A true and correct copy of the Stipulation is attached hereto as Exhibit "A."

28.     Notwithstanding Polanco having retained counsel and Ocwen having knowledge of this circumstance; and having waived any claim to a deficiency judgement with respect to the alleged Debt; Ocwen on behalf of Deutsche Bank, contacted Polanco

indirectly on multiple occasions for the purposes of collecting on the alleged consumer debt.

29.     On June 18, 2018, Ocwen contacted Polanco directly for the purposes of collecting on the Debt via mail, by requesting that Polanco pay a certain amount of money by a date certain.

30.     The immediately aforementioned communication indicated a "Total Amount Due" of $84,237.20 and "Reinstatement amount" of $10,656.16, thereby misrepresenting that Polanco owed any amount toward the alleged Debt which was waived by virtue of the Stipulation.

31.     The immediately aforementioned communication further asserted the right to assess and collect late fees in the amount of $25.36 if payment was received after July 16, 2018.

32.     By charging or threatening to charge a late fee on a debt which has been accelerated since July 2017; Ocwen is claiming, attempting or threatening to assert the existence of a legal right to charge late fees on an accelerated consumer debt when Ocwen has knowledged that such right does not exist.

33.     The immediately aforementioned communication further claimed or threatened that "any additional fees and expenses that post to the account after the statement date, must still be paid;" asserting the existence of a legal right to charge additional fees and expenses on an accelerated, waived Debt, when Ocwen has knowledge that such right does not exist.

34.     On June 18, 2018, Ocwen contacted Polanco directly for the purposes of

collecting on the Debt via mail, by sending Polanco a communication requesting Polanco to schedule an appointment with a "Relationship Manager." The communication provided a toll-free number and hours during which to call.

35.    The immediately aforementioned communication further indicated that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose."

36.    On or about June 21, 2018, the court entered its Uniform Final Judgment of Mortgage Foreclosure. The Final Judgment ordered that the judgment amount accrue interest at the rate of 5.72% per year.

37.    On October 9, 2018, a Certificate of Title was issued with respect to the property that secured the waived Debt.

38.    Notwithstanding Ocwen's actual knowledge of Polanco having retained legal counsel with respect to the Debt; the waiver of any right to seek a deficiency with respect to the Debt; and the sale of the property securing the Debt; Ocwen contacted Polanco directly via her cellular telephone on multiple occasions for the purposes of collecting on the alleged consumer debt.

39.    Polanco is the owner, regular user, and possessor of cellular telephone number 941- XXX-6063 (hereinafter, "Cellular Telephone").

40.    Ocwen, and its representatives, agents, employees, or assigns have telephoned Polanco's Cellular Telephone on numerous occasions for the purposes of collecting on the alleged Debt, in violation of the TCPA, 47 U.S.C. § 227 *et seq.*, and Florida Consumer Practices Act, Fla. Stat. § 559.72(7), § 559.72(9) and § 559.72(18).

41.     At no time herein did Ocwen have prior express consent to contact Polanco on her Cellular Telephone using an automated dialing system or artificial pre-recorded voice.

42.     Ocwen, its representatives, agents, employees or assigns have made calls to Polanco's Cellular Telephone on numerous occasions for purposes of collecting on the Debt without the appropriate consent and despite possessing knowledge that Polanco was represented by counsel with regard to the Debt and Polanco no longer owed the Debt.

43.     Ocwen repeatedly used an automatic telephone dialing system to call Polanco's Cellular Telephone in an attempt to collect on the alleged Debt, and without Polanco's prior express consent.

44.     At all times material hereto, to the extent Ocwen contends that it had consent to contact Polanco on her Cellular Telephone, any such consent was revoked for Ocwen to make autodialed Debt collection calls the moment (i) Ocwen was advised of Polanco's legal representation with respect to the Debt; (ii) when Polanco requested in writing that all direct communications and calls cease and be sent to legal counsel, (iii) when Polanco sued Ocwen for prior similar bad acts; and (iv) when Polanco settled any personal obligation to pay the alleged Debt.

45.     Notwithstanding Polanco having retained legal counsel with respect to the Debt and Ocwen having notice of the same, having received a specific request to cease and desist all communications, having waived the Debt, and having been previously sued by Polanco for similar bad acts, Ocwen has willfully and knowingly continued to contact

Polanco directly and on multiple occasions, using an automatic telephone dialing system to make calls to her Cellular Telephone in an attempt to collect the illegitimate Debt.

46.     On or about October 26, 2018, Ocwen's employee or representative called Polanco directly, on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  Ocwen placed the phone call from telephone number 800-746-2936.

47.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen.  The voicemail indicated that the caller was looking to speak with Polanco regarding a Debt and advised her to call back 800-746-2936. Such messages are indicative of the use of an automatic telephone dialing system.

48.     On October 30, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  Ocwen placed the phone call from telephone number 800-746-2936.

49.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen.  The voicemail indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

50.     On November 2, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  Ocwen placed the phone call from telephone number 800-746-2936.

51.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen.  The voicemail indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

52.     On November 7, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  Ocwen placed the phone call from telephone number 800-746-2936.

53.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen.  The voicemail indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

54.     On November 9, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone, no less than two times, using an automated dialing system in an attempt to collect the Debt.  Ocwen placed the phone call from telephone number 800-746-2936.

55.     Polanco received pre-recorded voicemails from the aforementioned calls from Ocwen.  The voicemails indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

56.     On November 13, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt.  Ocwen placed the phone call from telephone number 800-746-2936.

57.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen.  The voicemail indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

58.     On November 16, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone, no less than two times, using an automated

dialing system in an attempt to collect the Debt. Ocwen placed the phone calls from telephone number 800-746-2936.

59.     Polanco received pre-recorded voicemails from the aforementioned calls from Ocwen. The voicemails indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

60.     On November 21, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt. Ocwen placed the phone call from telephone number 800-746-2936.

61.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen. The voicemail indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

62.     On November 26, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone, no less than two times, using an automated dialing system in an attempt to collect the Debt. Ocwen placed the phone call from telephone number 800-746-2936.

63.     Polanco received pre-recorded voicemails from the aforementioned calls from Ocwen. The voicemails indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

64.     On November 29, 2018, Ocwen's employee or representative called Polanco directly on her Cellular Telephone using an automated dialing system in an attempt to collect the Debt. Ocwen placed the phone call from telephone number 800-746-2936.

65.     Polanco received a pre-recorded voicemail from the aforementioned call from Ocwen.  The voicemail indicated that the caller was looking to speak with Polanco regarding a debt and advised her to call back 800-746-2936.

66.     This is merely a sampling of the calls Polanco received, as Polanco has not been able to record the specifics of each and every call Ocwen made to Polanco due to her work and personal commitments, as well as the continued and increasing stress associated with the barrage of harassing debt collection calls.

67.     The characteristics of the immediately aforementioned phone calls indicates Ocwen used an automatic telephone dialing system to place telephone calls each time that it called Polanco's Cellular Telephone.

68.     As a result of Ocwen's actions, Polanco suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite the Debt having been waived, she must continue to endure Ocwen's unlawful continued debt collection attempts.

69.     Ocwen has contacted Polanco on her Cellular Telephones no less than 14 times without Polanco's prior express consent and by mail on no less than 2 occasions for the purposes of collecting on the alleged Debt and in direct contravention of Ocwen's knowledge of Polanco's representation by legal counsel and waiver of the Debt.

70.     The aforementioned conduct by Ocwen has harassed or could be reasonably expected to harass or abuse Polanco by willfully communicating with Polanco frequently and regularly despite actual knowledge of Polanco's representation by legal counsel, and despite the waiver of the alleged Debt.

71.     Ocwen's communications continued after the parties had already negotiated a waiver of the Debt and Certificate of Title issued, which could only have been intended to exhaust Polanco's will.  The FCCPA, Section 559.77, provides for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Ocwen.

72.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to Plaintiff's cellular telephone in violation of the TCPA of the regulations proscribed thereunder.

73.     Additionally, the TCPA Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system, predictive telephone dialing system, or artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

74.     At all material times herein, it would have been possible for Defendant to avoid violating the terms of the FCCPA and the TCPA.

75.     Upon information and belief, based upon the aforementioned allegations, Defendants' telephone calls made to Plaintiff's Cellular Telephone using an automatic dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice were made in willful and knowing violation of the TCPA.

76.     All conditions precedent to the filing of the action have been completed or have been waived.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE—**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

77.     Ocwen is subject to, and has violated the provisions of, Florida Statutes, Section 559.55(7) by collecting consumer debts from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

78.     Specifically, Ocwen had actual knowledge of the Debt Collection Action and resulting Stipulation waiving the Debt, actual knowledge of Plaintiff's legal representation with respect to the Debt, and possessed legal counsel's name and contact information.

79.     Despite the above referenced knowledge, Ocwen continued to communicate directly with Plaintiff by calling her Cellular Telephone without prior express consent to do so, no less than fourteen (14) times over the past two years, to collect on the Debt despite the fact that the Debt on the Account was waived and was no longer enforceable against the Plaintiff via the Stipulation

80.     Further, despite the parties having negotiated their differences with respect to the Debt, and despite Ocwen's actual knowledge that it was no longer entitled to personally enforce the Debt, Ocwen continued to communicate with Plaintiff in an effort to exhaust Plaintiff's remaining will.

81.     Ocwen made each of the aforementioned phone calls in an attempt to abuse and harass Plaintiff into believing that despite Plaintiff having retained legal counsel with respect to the Debt, despite having received a waiver of the enforceability of the Debt against Plaintiff, and despite Ocwen lacking Plaintiff's prior express consent to call her Cellular Telephone using an automated telephone dialing system, that Defendant could and would continue its Debt collection attempts until Plaintiff satisfied the waived Debt.

82.     Ocwen's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt when it had been waived as a result of the Stipulation thereby eliminating any personal liability of Plaintiff with respect to the Account.

83.     Ocwen's willful and flagrant violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

84.     As a direct and proximate result of Ocwen's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

85.     Ocwen is subject to, and violated the provisions of, Florida Statues, Section 559.72(9), by attempting to collect the Debt with knowledge that the alleged Debt is not legitimate or by asserting the existence of some legal right when Ocwen knows that the right does not exist.

86.     Specifically, Ocwen possessed actual knowledge of the Stipulation and the waiver of the Debt contained therein.

87.     Ocwen has actual knowledge that it has no right to collect the Debt from Plaintiff, a Debt that had been waived by virtue of the Stipulation.

88.     Despite its actual knowledge that the Debt was waived and no longer personally enforceable, Ocwen continued to attempt to collect the Debt directly from Plaintiff by sending at least two written communications via U.S. Mail, all done in reckless disregard of Plaintiff's right to be free from illegitimate, unlawful Debt collection attempts.

89.     Defendant has sought to claim, attempt, or threaten to enforce a debt which Defendant knows is not legitimate, or is asserting the existence of some legal right by threatening to assess or actually assessing late charges on a Debt that has been accelerated since July 2017, and Final Judgment entered since June 21, 2018, in contravention of Florida law.

90.     Despite its actual knowledge that the Debt was waived and no longer personally enforceable, Ocwen continued to attempt to collect the Debt directly from Plaintiff by contacting her on her Cellular Telephone no less than fourteen times in the past two years, all done in reckless disregard of Plaintiff's right to be free from illegitimate, unlawful Debt collection attempts.

91.     In sum, during the course of Ocwen's attempts to collect the Debt, it knowingly and falsely asserted that the Debt was legitimate, and falsely asserted that it still had the right to collect the Debt directly from Plaintiff despite possessing actual knowledge of Plaintiff's disputes and the waiver of the Debt.

92.     As a direct and proximate result of Ocwen's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

93.     Ocwen is subject to, and violated the provisions of, Florida Statues, Section 559.72(18), by communicating with a debtor when Ocwen has actual knowledge that Plaintiff was represented by legal counsel with respect to the Debt.

94.     Specifically, Ocwen received (i) legal counsel's notice of appearance in the Debt Collection Action;(ii) communications from Plaintiff's legal counsel negotiating the waiver of the Debt, and (iii) the Stipulation memorializing the waiver of the Debt.

95.     All of the aforementioned documents provided Ocwen with actual knowledge of Plaintiff's legal representation with respect to the Debt and provided such counsel's contact information.

96.     Despite Ocwen's actual knowledge of Plaintiff's representation by legal counsel with respect to the Debt, Ocwen continued to communicate directly with Plaintiff in an attempt to collect the debt, by calling her cellular telephone no less than fourteen (14) times over the past two years, all done in reckless disregard of Plaintiff's right to be free from illegitimate Debt collection attempts.

97.     Despite Ocwen's actual knowledge of Plaintiff's representation by legal counsel with respect to the Debt, Ocwen continued to communicate directly with Plaintiff

in an attempt to collect the debt, mailing no less than two (2) written communications over the past two years, all done in reckless disregard of Plaintiff's right to be free from illegitimate Debt collection attempts.

98.     As a direct and proximate result of Ocwen's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**TELEPHONE CONSUMER PROTECTIVE ACTION –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

99.     Ocwen is subject to, and has violated the provisions of, 47 United States Code, Section 227(b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to make calls to a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

100.     At no time did Ocwen have Plaintiff's prior express consent to make Debt collection calls to Plaintiff on her Cellular Telephone.

101.     Further, if Ocwen contends it had such consent, such consent was revoked as a matter of law when Ocwen received: (i) notice of legal counsel's representation of Plaintiff with respect to the Debt in the Debt Collection Action; (ii) communications from legal counsel negotiating the waiver of the Debt; and (iii) the Stipulation waiving the Debt.

102.     Additionally, if Ocwen contends these phone calls were made for "information purposes only," they still lacked the required express consent necessary to make such informational calls to Plaintiff's cellular telephone using an ATDS, a PTDS, or

an APV.

103.    Despite lacking Plaintiff's prior express consent, Ocwen made at least fourteen (14) Debt collection phone calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

104.    The telephone calls made by Ocwen, complained of herein, are the result of a repeated willful and knowing violation of the TCPA.

105.    As a direct and proximate result of Ocwen's conduct, Plaintiff has suffered:

a.      The periodic loss of her cellular phone service;

b.      Lost material costs associated with the use of peak time cellular phone minutes;

c.      Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing Debt collection calls placed in violation of the TCPA to collect the waived Debt;

d.      Statutory damages; and

e.      The expenditure of costs and attorney's fees associated with the prosecution of this matter.

**COUNT FIVE:**
**TELEPHONE CONSUMER PROTECTIVE ACTION –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

106.    The conduct of Ocwen complained of herein, is the result of a repeated

19

willful and knowing violation of the TCPA.

107.    More specifically, as prior express consent never existed or was revoked prior to Ocwen's placement of calls to Plaintiff's Cellular Telephone, and Ocwen is fully aware of the TCPA and its restrictions, Ocwen's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

108.    Ocwen also knows that it did not, and has not, reached out to Plaintiff to independently obtain Plaintiff's prior express consent—oral, written or otherwise—to call Plaintiff's Cellular Telephone using an ATDS, a PTDS and/or an APV.

109.    Ocwen was also undisputedly aware of Plaintiff's representation by counsel with respect to the alleged Debt, as well as had knowledge the Debt was eliminated, yet knowingly and consciously made the Debt collection calls to Plaintiff's Cellular Telephone anyway.

110.    Ocwen is also fully aware of the TCPA and its restrictions and, as such, Ocwen's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

111.    As a result of Ocwen's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble statutory damages, up to $1,500.00, for each and every violation, as alleged above, pursuant to 47 United States Code, Section 227(b)(3)(B) and 47 United States Code, Section 227 (b)(3)(C).

112.    Plaintiff is also entitled to and seeks injunctive relief enjoining Defendants from further violations of the TCPA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Ocwen declaring that Ocwen violated the FCCPA and the TCPA;

b.    Judgment against Ocwen for maximum statutory damages for the violations of the FCCPA;

c.    Judgment against Ocwen enjoining them from engaging in further conduct in violation of the FCCPA;

d.    Judgment against Ocwen for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

e.    Judgment against Ocwen for treble damages in the amount of up to $1,500.00 for each of Defendant's telephone calls that violated the TCPA for which Defendants acted knowingly and/or willfully;

f.    Judgment enjoining Defendants from engaging in further conduct in violation of the TCPA;

g.    Actual damages in an amount to be determined at trial;

h.    Compensatory damages in an amount to be determined at trial;

i.    Punitive damages for violating the FCCPA in an amount to be determined at trial;

j.    An award of attorneys' fees and costs; and

k.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Dated this 9th day of January 2019.

Respectfully Submitted,

THE LYONS LAW GROUP, P.A.

/s/ *Rebbecca A. Goodall*
Andrew M. Lyons, Esq.
Florida Bar No.: 0011288
Rebbecca A. Goodall, Esq.
Florida Bar No.: 0115344
4103 Little Road
New Port Richey, FL 34655
(727) 375-8900
(727) 375-2334 (fax)
Email Service:
pleadings@lyonslawgroup.com
Attorneys for Plaintiff,
Elizabeth Polanco